# EXHIBIT A

Michael Connett (SBN 300314)
Tyler J. Bean (pro hac vice to be filed)
Albert J. Asciutto (pro hac vice to be filed)
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Suite 1000
Los Angeles, California 90017
(772) 783-8436
mconnett@sirillp.com
tbean@sirillp.com
aasciutto@sirillp.com

*Attorneys for Plaintiffs and the Putative Class*

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
04/02/2026
By: _____ Deputy
V. Bloxson

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SACRAMENTO

| | |
|---|---|
| **ASHLEY GRIMES** and **CAMERON DIEGLE,** on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **LOWE'S HOME CENTERS, LLC,** and **LOWE'S COMPANIES, INC.,** a North Carolina Corporation**,** <br><br> Defendants. | Case No. 26CV008109 <br><br> **CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE, AND EQUITABLE RELIEF FOR:** <br><br> 1. **VIOLATIONS OF CAL. CIV. CODE 1798.90.5** <br><br> 2. **INVASION OF PRIVACY UNDER CAL. CONST. ART. 1, 1** <br><br> 3. **INVASION OF PRIVACY** <br><br> 4. **UNJUST ENRICHMENT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Ashley Grimes and Cameron Diegle (hereinafter, "Plaintiffs"), individually and on behalf of all similarly situated persons, alleges the following against Defendants Lowe's Home Centers, LLC and Lowe's Companies, Inc. (hereinafter, collectively "Defendants" or "Lowe's"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other

things, investigation by his counsel and review of public documents as to all other matters:

## INTRODUCTION

1.     In 1887, the Northern District of California recognized that:

> Of all the rights of the citizen, few are of greater importance or more essential to his peace and happiness than the right of personal security, and that involves, not merely protection of his person from assault, but exemption of his private affairs, books, and papers, from the inspection and scrutiny of others. Without the enjoyment of this right, all others would lose half their value.[1]

2.     Nearly 150 years later, Americans still agree,[2] placing great value on their right to privacy, including their right to travel and associate with others without being surveilled. Unfortunately, in the modern era, this right is increasingly threatened by the irresponsible deployment of new technologies.

3.     Flock Group, Inc. ("Flock") is a technology company that specializes in automatic license plate recognition systems, commonly referred to as Automatic License Plate Readers ("ALPRs"). ALPRs are advanced camera systems that can automatically detect and record an individual's "Vehicle Tracking Data," and then aggregate and use that information to track an individual's movements. The term "Vehicle Tracking Data" as used herein means license plate numbers, vehicle characteristics (including any and all data used by Defendants and/or Flock to identify a given vehicle), time-stamped records, and geographic location data reflecting a vehicle's location and movements through areas, along with any other information monitored, captured, collected, and/or aggregated by Flock's ALPRs and

---

[1] *In re Pacific Ry. Commission*, 32 F. 241, 250 (N.D. Cal. 1887).

[2] *See, e.g., YouGov Mass Surveillance Polling*, DPEF (Dec. 14, 2023), demandprogresseducationfund.org/new-polling-as-mass-surveillance-debate-reaches-final-stages-in-congress-americans-demonstrate-overwhelming-support-for-increased-privacy-protections (last accessed Aug. 20, 2025) (78% of Americans think Congress should strengthen geolocation privacy protections); Mary Madden and Lee Rainie, *Americans' Attitudes About Privacy, Security and Surveillance,* PEW (May 20, 2015), https://www.pewresearch.org/internet/2015/05/20/americans-attitudes-about-privacy-security-and-surveillance/  (last accessed Aug. 20, 2025) (88% of Americans state not being watched without permission "important").

ALPR systems.

4.      Flock's customers—including homeowners' associations, businesses, schools, law enforcement organizations, and anyone else willing to pay the approximately $2,500 annual fee for access to its enormous database of personal information—can install Flock's ALPRs on their property or around their community. Once installed, the ALPRs identify and create a detailed record of every vehicle that enters its view. Unlike a person at an intersection, these cameras never blink, they never sleep, and they see and remember everything. Every passing car is captured, and its license plate and other features are analyzed using proprietary machine learning programs.

5.      More troubling is the fact that Flock's customers, like Defendants, who install the cameras on their properties are not the only ones that have access to the data collected by the ALPRs: When Flock's customers provide Flock with access to the recordings created by the customer's ALPRs, Flock then aggregates this data with information collected from thousands of other Flock ALPRs to create a centralized, highly detailed, searchable record of each driver's movements. Flock then grants its customers access to this vast surveillance database (referred to herein as the "Flock Safety Network" or "Flock Safety").[3]  As a result, anyone with access to the Flock Safety Network can track the movements of anyone traveling within the reach of Flock's national camera network.

6.      The scope of this mass surveillance is truly terrifying. Currently, there are *at least 80,000* Flock ALPRs operating in 49 states.[4] Through those ALPRs, Flock captures individuals' Vehicle

---

[3] *National LPR Network*, FLOCK SAFETY, https://www.flocksafety.com/products/national-lpr-network (last accessed March 6, 2026) (detailed Flock's nationwide shared data network);
*Police cameras track billions of license plates per month,* NBC NEWS, https://www.nbcnews.com/tech/tech-news/flock-police-cameras-scan-billions-month-sparking-protests-rcna230037 (last accessed March 6, 2026) (highlighting Flock's "live national database.").
[4] *Flock Gives Law Enforcement All Over The Country Access to Your Location*, ACLU MASSACHUSETTS, https://data.aclum.org/2025/10/07/flock-gives-law-enforcement-all-over-the-country-access-to-your-location/ (last accessed March 10, 2026) (detailed Flock's ALPR surveillance network); *National LPR Network*, FLOCK SAFETY, https://www.flocksafety.com/products/national-lpr-network (last accessed

Tracking Data through a staggering **20-billion** vehicle scans every single month,[5] generating an immense database of individuals' movements. All of this is only possible through Flock customers' installation of its surveillance cameras on their properties.

7.     The California Legislature was moved by the prevalence and scope of this violation of privacy and passed the California ALPR Law, Cal. Civ. Code § 1798.90.5, *et seq.* (the "ALPR Law"), which regulates the use of ALPRs by public and private entities. Among other things, the California Legislature recognized that, at a minimum, the public has a right to know that their Vehicle Tracking Data is being recorded and aggregated, and how that data will be used.  Therefore, the ALPR Law requires that every "operator" ("a person that operates an ALPR system") and "end-user" ("a person that accesses or uses") an ALPR system, such as Flock customers, like Defendants, make publicly available, and post conspicuously on its website, very specific ALPR policy and usage information that meets the ***minimum*** requirements of the law.

8.     Defendants are corporations collectively engaged in the ownership and operation of Lowe's retail home improvement stores throughout the United States.[6] Defendants own and operate Lowe's retail store locations nationwide, including approximately 112 stores in California.[7]

9.     Defendants installed Flock's ALPRs across many, if not all, of its properties in California, resulting in Plaintiffs and Class Members being tracked by Flock's mass surveillance network. However, Defendants failed to properly and timely inform Plaintiffs and Class Members that their Vehicle

---

March 6, 2026) (noting Flock's network operates across 49 states).

[5] *Police cameras track billions of license plates per month,* NBC NEWS, https://www.nbcnews.com/tech/tech-news/flock-police-cameras-scan-billions-month-sparking-protests-rcna230037 (last accessed March 6, 2026).

[6] *Who We Are,* LOWE'S, https://corporate.lowes.com/who-we-are (last accessed April 1, 2026) (listing Defendant's industry presence).

[7] *Lowe's Stores in California,* LOWE'S, https://www.lowes.com/Lowes-Stores/California/CA (last accessed April 1, 2026) (listing Defendant's California locations).

Tracking Data was being captured, time-stamped, and recorded, and additionally failed to notify Plaintiffs and Class Members that the resulting data being aggregated enabled the long-term tracking of Plaintiffs and Class Members' individual movements.

10.     Defendants' use of the Flock ALPRs is not just an invasion of privacy, but also a violation of the ALPR Law. While Defendants purport to maintain certain ALPR policy or usage requirements, Defendants have failed to adhere to and comply with the ALPR Law, as Defendant's ALPR policy representations contain only partial, and incomplete, policy information. Furthermore, Defendants have failed to comply with multiple mandatory requirements of the statute, including failing to adequately disclose, implement, and maintain all required usage and privacy protections.

11.     As a result of Defendants' misconduct, Plaintiffs and Class Members have suffered numerous injuries, including: (i) invasion of privacy; (ii) emotional distress and heightened concerns related to the surreptitious surveillance of their movements by unknown third parties; and (iii) statutory damages.

12.     Therefore, Plaintiffs seek, on behalf of themselves and a Class of similarly situated persons, to remedy these harms and assert the following statutory and common law claims against Defendants: violations of the California ALPR Law, Cal. Civ. Code § 1798.90.5, *et seq.*; Invasion of Privacy under California's Constitution, Cal. Const. Art. 1, § 1;  Common Law Invasion of Privacy; and Common Law Unjust Enrichment.

## PARTIES

### A.  PLAINTIFFS

*Plaintiff Ashley Grimes*

13.     Plaintiff Ashley Grimes (hereinafter, "Plaintiff Grimes") is a citizen of the State of California residing in Sacramento County and brings this action both in an individual capacity, and on

behalf of all others similarly situated.

14. Plaintiff Grimes has visited Defendants' Folsom Lowe's located at 800 E. Bidwell St., Folsom, CA 95630 on several occasions to do personal shopping. For example, on October 30, 2025, February 26, 202, and March 30, 2026, Plaintiff Grimes drove her personal vehicle to the shopping center where Defendants' Folsom Lowe's is located, parked her car in the parking lot, and completed her personal shopping.

15. Unbeknownst to Plaintiff Grimes, Defendants had installed Flock ALPRs on the Folsom Lowe's premises which recorded Plaintiff Grimes and her Vehicle Tracking Data, and transmitted that data, including pictures of her vehicle, other automatically-generated information relating to her vehicle, the identities of her associates, and her time-stamped location, to Flock, where it was then aggregated and catalogued in Flock's voluminous vehicle tracking records.

16. Defendants failed to properly and timely inform Plaintiff Grimes, through the public posting on its website of a usage and privacy policy as required under California's ALPR Law, that when she visited Defendants' Lowe's location, or even just drove near it, Defendants recorded and tracked Plaintiff Grimes' location, movements, and Vehicle Tracking Data, and transmitted that information to Flock for the unauthorized and illegal purposes set forth herein.

17. Plaintiff Grimes was not aware that she was being tracked, and never authorized Defendants to disclose any information pertaining to her person, including ALPR-collected information subject to the California ALPR Law, to Flock or any other unauthorized third-party.

18. Plaintiff Grimes worries about the proliferation of Flock ALPRs in California. The installation and operation of the Flock ALPRs in California, all connected to Flock's nationwide database, have given her a great deal of anxiety. Plaintiff Grimes worries about her privacy and personal security, and she worries about how governmental and private individuals with access to the Flock Safety

Network might use or misuse the records of her movements. Further, Plaintiff Grimes worries that malicious third-party hackers might one day gain access to the Flock Safety Network and misuse such data.

19.     Plaintiff Grimes, like most people, tries to maintain a degree of privacy in her life. But Defendants' installation and operation of the Flock ALPRs have invaded her privacy by exposing a record of her movements throughout Sacramento County to every Flock ALPR operator and end-user and the persons to whom they have granted access to the information captured and processed by Flock. And worse, Defendants engaged in such violations without properly and publicly notifying Plaintiff and Class Members of the same.

20.     Plaintiff Grimes has no control over how Flock, or anyone else who has authorized or unauthorized access to the Flock Safety Network, uses the record of her movements and/or her Vehicle Tracking Data. Plaintiff Grimes has no say in when, or even if, Flock's records of Plaintiff Grimes' personal information and movements will be deleted. Additionally, if someone misuses Plaintiff Grimes' information, or if Flock experiences a data breach exposing Plaintiff Grimes' information, Plaintiff Grimes may never know unless the affected user or Flock decides to tell her.

21.     On information and belief, Defendants used the Flock ALPRs to capture the whole of Plaintiff Grimes' movements at, in, and around Defendants' Folsom Lowe's, and will continue to do so until the expiration or termination of each Flock Safety user's access to this information. Further, on information and belief, Defendants used the Flock ALPRs to record, transmit, and share Plaintiff Grimes' personal movement and Vehicle Tracking Data with any individual or entity who has access to the Flock Safety Network.

***Plaintiff Cameron Diegle***

22.     Plaintiff Cameron Diegle (hereinafter, "Plaintiff Diegle") is a citizen of the State of

California residing in Sacramento County and brings this action both in an individual capacity, and on behalf of all others similarly situated.

23.    Plaintiff Diegle has visited Defendants' Folsom Lowe's located at 800 E. Bidwell St., Folsom, CA 95630 on several occasions to do personal shopping. For example, on March 29, 2026, as well as on December 26 2025, Plaintiff Diegle drove his personal vehicle Defendant's Folsom Lowe's location, parked his car in Defendants' parking lot, and entered the Folsom Lowe's home improvement store to complete his personal shopping.

24.    Unbeknownst to Plaintiff Diegle, Defendants had installed Flock ALPRs on the Folsom Lowe's premises which recorded Plaintiff Diegle and his Vehicle Tracking Data, and transmitted that data, including pictures of his vehicle, other automatically-generated information relating to his vehicle, the identities of his associates, and his time-stamped location, to Flock, where it was then aggregated and catalogued in Flock's voluminous vehicle tracking records.

25.    Defendants failed to properly and timely inform Plaintiff Diegle, through the public posting on its website of a usage and privacy policy as required under California's ALPR Law, that when he visited Defendants' Lowe's location, or even just drove near it, Defendants recorded and tracked Plaintiff Diegle's location, movements, and Vehicle Tracking Data, and transmitted that information to Flock for the unauthorized and illegal purposes set forth herein.

26.    Plaintiff Diegle was not aware that he was being tracked, and never authorized Defendants to disclose any information pertaining to his person, including ALPR-collected information subject to the California ALPR Law, to Flock or any other unauthorized third-party.

27.    Plaintiff Diegle worries about the proliferation of Flock ALPRs in California. The installation and operation of the Flock ALPRs in California, all connected to Flock's nationwide database, have given him a great deal of anxiety. Plaintiff Diegle worries about his privacy and personal

security, and he worries about how governmental and private individuals with access to the Flock Safety Network might use or misuse the records of his movements. Further, Plaintiff Diegle worries that malicious third-party hackers might one day gain access to the Flock Safety Network and misuse such data.

28.     Plaintiff Diegle, like most people, tries to maintain a degree of privacy in his life. But Defendants' installation and operation of the Flock ALPRs have invaded his privacy by exposing a record of his movements throughout Sacramento County to every Flock ALPR operator and end-user and the persons to whom they have granted access to the information captured and processed by Flock. And worse, Defendants engaged in such violations without properly and publicly notifying Plaintiff and Class Members of the same.

29.     Plaintiff Diegle has no control over how Flock, or anyone else who has authorized or unauthorized access to the Flock Safety Network, uses the record of his movements and/or his Vehicle Tracking Data. Plaintiff Diegle has no say in when, or even if, Flock's records of Plaintiff Diegle's personal information and movements will be deleted. Additionally, if someone misuses Plaintiff Diegle's information, or if Flock experiences a data breach exposing Plaintiff Diegle's information, Plaintiff Diegle may never know unless the affected user or Flock decides to tell him.

30.     On information and belief, Defendants used the Flock ALPRs to capture the whole of Plaintiff Diegle's movements at, in, and around Defendants' Folsom Lowe's, and will continue to do so until the expiration or termination of each Flock Safety user's access to this information. Further, on information and belief, Defendants used the Flock ALPRs to record, transmit, and share Plaintiff Diegle's personal movement and Vehicle Tracking Data with any individual or entity who has access to the Flock Safety Network.

**B. DEFENDANTS**

***Defendant Lowe's Home Centers, LLC***

31.    Defendant Lowe's Home Centers, LLC is an LLC formed under the laws of North Carolina with its principal place of business at 1000 Lowe's BLVD, Mooresville, North Carolina, 28117. Defendant Lowe's Home Centers, LLC's registered agent for service with the State of California is CSC – Lawyers Incorporating Service, Koy Saecho, 2710 Gateway Oaks Drive, Sacramento, CA.

***Defendant Lowe's Companies, Inc.***

32.    Defendant Lowe's Companies, Inc. is the publicly traded parent corporation of Lowe's Home Centers, LLC, incorporated in North Carolina with its principal place of business at 1000 Lowe's BLVD, Mooresville, North Carolina, 28117. Lowe's Companies, Inc. is traded on the New York Stock Exchange under the ticker symbol "LOW" and is included in the S&P 500. For the fiscal year 2025, Lowe's Companies, Inc. reported total sales of more than $86 billion.[8]

33.    Upon information and belief, Defendants Lowe's Home Centers, LLC and Lowe's Companies, Inc. collectively own and operate Lowe's retail home improvement store locations throughout the United States, including all approximately 112 California Lowe's locations. Lowe's Home Centers, LLC is the primary operating subsidiary of Lowe's Companies, Inc.

## JURISDICTION AND VENUE

34.    The Court has jurisdiction over this action under section 410.10 of the California Code of Civil Procedure and Article VI, section 10 of the California Constitution.

35.    This Court has personal jurisdiction over Defendants because Defendants purposefully direct and conduct substantial business activities in California, including owning, operating, and

---

[8] *Lowe's Reports Fourth Quarter 2025 Sales and Earnings Results*, Lowe's (Feb. 25, 2026), https://corporate.lowes.com/newsroom/press-releases/lowes-reports-fourth-quarter-2025-sales-and-earnings-results-02-25-26.

managing approximately 112 Lowe's stores throughout the State. Defendants have purposefully availed themselves of the privileges of conducting business in California, and Plaintiffs' and Class Members' claims arise out of and relate to Defendants' California-based activities, including its operation of approximately 112 Lowe's properties within this State.

36.    Venue is proper in this Court under California Code of Civil Procedure Section 395.5 because Defendants' liability arose in this County, where the acts and omissions giving rise to Plaintiffs' claims occurred.

37.    This action is property maintained as a class action pursuant to California Code of Civil Procedure § 382.

## STATEMENT OF FACTS

### A.  LEGISLATIVE HISTORY OF THE ALPR LAW

38.    In 2015, California enacted the ALPR Law, Cal. Civ. Code §§ 1798.90.5 *et seq.*, to address the increasing use of ALPR systems and the privacy risks associated with the aggregation and storage of Vehicle Tracking Data. The Legislature enacted the statute against the backdrop of rapidly expanding surveillance technology capable of collecting and aggregating large volumes of location-based information about individuals.

39.    The legislative history of the ALPR Law reflects a particular concern with the ability of ALPR technology to compile historical Vehicle Tracking Data, aggregate that information, and to do so without public notice or consent.

40.    The Senate Committee on Transportation and Housing, when reviewing the ALPR Law proposal, explained that while license plates themselves are publicly visible, ALPR technology enables far more extensive monitoring because of its ability to systematically collect and aggregate Vehicle Tracking Data. The Committee noted that ALPR systems can capture thousands of license plates per

minute and compare those plates against databases of vehicles associated with crimes or other alerts.[9]

41.     The California Assembly Committee on Privacy and Consumer Protection explained that ALPR systems "have the ability to record vehicles' attendance at locations or events that, although lawful and public, may be considered private."[10] The Committee further noted the potential sensitivity of such information, observing that "mobile LPR units could read and collect the license plate numbers of vehicles parked at addiction counseling meetings, doctors' offices, health clinics, or even staging areas for political protests."[11]

42.     Against this backdrop, the Senate Committee on Transportation and Housing emphasized the risks created when ALPR systems compile and store location data over time. The Legislature expressed concern that ALPR technology allows the creation of large databases of Vehicle Tracking Data, enabling the reconstruction of an individual's movements and activities through the aggregation of time-stamped location records. As the Committee explained:

> "Unlike other types of personal information that are covered by existing law, civilians are not always aware when their ALPR data is being collected.  One does not even need to be driving to be subject to ALPR technology:  A car parked on the side of the road can be scanned by an ALPR system."[12]

43.     Given the immense risk of abuse at the expense of individuals' rights to privacy, the Senate committee noted the privacy concerns associated with ALPR technology, explaining:

> "The collection of a license plate number, location, and time stamp over multiple time points can identify not only a person's exact whereabouts but also their pattern of

---

[9] Senate Committee on Transportation and Housing (April 7, 2015) https://www.leginfo.ca.gov/pub/15-16/bill/sen/sb_0001-0050/sb_34_cfa_20150402_153639_sen_comm.html (last accessed March 5, 2026).
[10] Assembly Committee on Privacy and Consumer Protection – Bill Analysis for SB 34 (July 7, 2015) https://www.leginfo.ca.gov/pub/15-16/bill/sen/sb_0001-0050/sb_34_cfa_20150706_104259_asm_comm.html (last accessed March 5, 2026).
[11] *Id.*
[12] Senate Committee on Transportation and Housing (April 7, 2015) https://www.leginfo.ca.gov/pub/15-16/bill/sen/sb_0001-0050/sb_34_cfa_20150402_153639_sen_comm.html (last accessed March 5, 2026).

movement."[13]

**B.  CALIFORNIA'S ALPR LAW**

44.    To address these privacy concerns, the California Legislature imposed specific requirements on entities operating or using ALPR systems. As the Legislature stated, the purpose of the ALPR Law is to ensure "minimal privacy protections by requiring the establishment of privacy and usage protection policies for ALPR operators and end-users. This bill does not prevent the authorized sharing of data, but if data is shared, it must be justified and recorded."[14]

45.    The ALPR Law defines an "ALPR system" as "a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data." Cal. Civ. Code § 1798.90.5(a).

46.    The ALPR Law requires ALPR operators, defined as "a person that operates an ALPR system," and ALPR end-users, defined as "a person that accesses or uses an ALPR system," to draft, adopt, and adhere to written policies governing the collection, use, and sharing of ALPR information. *See* Cal. Civ. Code §§ 1798.90.5(a), 1798.90.5(c), 1798.90.51(b), 1798.90.52, 1798.90.53(b).

47.    Importantly, the ALPR Law demands ALPR operators and end-users must "implement a usage and privacy policy to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties." Cal. Civ. Code §§ 1798.90.51(b), 1798.90.53(b). To not violate an individual's right to know, the statute commands that ALPR operators' and end-users' privacy policies include the following:

(A) The authorized purposes for accessing and using ALPR information;

(B) A description of the job title or other designation of the employees and independent

---

[13] *Id.*
[14] *Id.*

contractors who are authorized to access and use ALPR information, including identifying the training requirements necessary for those authorized employees and independent contractors;

(C) A description of how the ALPR system will be monitored to ensure the security of the information accessed or used, and compliance with all applicable privacy laws and a process for periodic system audits;

(D) The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons;

(E) The title of the official custodian, or owner, of the ALPR information responsible for implementing this section;

(F) A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors; and

(G) The length of time ALPR information will be retained, and the process the ALPR end-user will utilize to determine if and when to destroy retained ALPR information. [15]

48.     ALPR operators must also comply with two additional requirements under Cal. Civ. Code § 1798.90.52:

A.  The Audit Requirement: ALPR operators must maintain a record of each time the ALPR system is accessed, including the date and time, data queried, identity of the querying party, and purpose of the query. § 1798.90.52(a).

B.  The Proper Use Requirement: ALPR operators must require that ALPR information only be used for the authorized purposes described in the usage and privacy policy. § 1798.90.52(b).

49.     Operators and end-users of ALPR technology are required not only to create and adhere to these privacy policies, but also to make these policies publicly available on their websites, conspicuously specifying the authorized purposes for which ALPR information may be accessed or used. *Id.*

---

[15] CA. Civ. Code §§ 1798.90.51; 1798.90.53.

50.    Thus, requiring ALPR operators and end-users to establish and publicly post policies governing use and maintenance of this data is a primary focus of the ALPR Law. Through these provisions, the Legislature sought to mitigate the privacy risks created by ALPR systems by ensuring transparency, limiting unauthorized access and use, and regulating the collection and aggregation of Vehicle Tracking Data.

51.    These requirements ensure both that ALPR operators and end-users consider and make deliberate decisions on these issues, and that individuals can know when and how their ALPR Vehicle Tracking Data is being collected and used.

52.    Most importantly, the ALPR Law "grants individuals *the right to know* which entities are collecting their ALPR data and how it is being used and maintained. Collecting and maintaining individuals' ALPR information without implementing and making public the statutorily required policy harms these individuals by violating this right to know."[16]

## C.  FLOCK SURVEILS AMERICAN COMMUNITIES ON A MASSIVE SCALE

### i.    Flock's Automatic License Plate Readers.

53.    Flock is one of the largest ALPR purveyors in the country, marketing its products to a diverse range of public and private entity clients, including retail stores, hospitals, places of worship, residential HOAs, law enforcement agencies, and many more.[17] On its website, Flock represents that its products are used by over 5,000 law enforcement agencies, over 6,000 communities, and over 1,000 businesses.[18]

54.    Flock ALPRs are computer-controlled cameras that automatically capture, identify, and

---

[16] *Bartholomew v. Parking Concepts, Inc*., 118 Cal. App. 5th 438, 449 (2026).

[17] *Flock Safety*, FLOCK, https://www.flocksafety.com/ (last accessed Aug, 20, 2025) (listing "Industries" that use Flock's products).

[18] *License Plate Readers*, FLOCK, https://www.flocksafety.com/products/license-plate-readers (last accessed Aug. 20, 2025).

record all vehicles that come into their view.[19] Because Flock ALPRs are solar-powered and able to connect to Flock's computer network through cellular data, they can be mounted almost anywhere, including on building exteriors, signposts, light poles, or even moving vehicles. As Flock advertises, customers can "Deploy [its ALPRs] Anywhere."[20]

55.    The primary tool used by Flock ALPRs to identify a given vehicle is Flock's license plate detection software. When a license plate enters the ALPR's field of view, the ALPR automatically captures a photograph of the license plate and transfers it to the Flock Safety Network, where character recognition software automatically converts the image into a license plate number.[21]

56.    Flock also employs additional vehicle identification methods beyond license plate detection. For example, through its *Vehicle Fingerprint* software, Flock ALPRs are also able to register a range of vehicle characteristics such as make, model, color, and even unique features like bumper stickers to further ensure accurate identification of a given vehicle.[22]

57.    Flock claims that its ALPRs can accurately capture vehicles traveling at up to 100 miles per hour, at distances of up to 75 feet, regardless of lighting.[23] Consequently, through a combination of precise imaging and powerful, multivariable vehicle identification software, Flock ALPRs are able to identify almost every vehicle that they see.

### ii.  Flock's Mass Surveillance Apparatus.

58.    Private entities like Defendants can lease Flock's ALPRs to track vehicles traveling through or near their premises. After being installed, the Flock ALPRs automatically detect, identify,

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id*; *Flock Safety: Eroding Your Privacy & Keeping You Safe with Surveillance*, REDACT (May 15, 2025), https://redact.dev/blog/flock-safety-lpr-privacy-surveillance/ (last accessed Aug. 20, 2025).
[23] Andy East, *Columbus Police Department Got Your Number*, COLUMBUS REPUBLIC (Jan. 23, 2022), at A1.

and create a record of every vehicle that enters their field of view.[24] These records include not only a picture of the vehicle but also a wide range of automatically generated identification information, defined herein as Vehicle Tracking Data, including the vehicle's license plate number, make, model, body, state of registration, the date and time it was recorded, the location of the ALPR, and a list of other records of the same vehicle, as depicted in *Figure 1* below.[25]



*Figure 1. The Flock software dashboard.*

59.    Once recorded by the Flock ALPRs, these vehicle records, including the Vehicle Tracking Data, are then added to the Flock Safety Network, which combines records from other Flock ALPRs' continuous recordings, including the vehicles captured by at least 80,000 ALPRs nationwide. Ultimately, this system of compiling license plate and vehicle information data allows Flock to create a continuous record of a vehicle's movement through areas where Flock ALPRs are present.

---

[24] *Id.*

[25] Reproduced from: Sarah Holder and Fola Akinnibi, *Suburbs of Surveillance*, BLOOMBERG (Aug. 4, 2021), https://www.bloomberg.com/news/features/2021-08-04/surveillance-startup-brings-police-tech-to-neighborhoods (last accessed Aug. 20, 2025).

60.     Flock's customers can access this vast surveillance database.  Indeed, Flock admits that all of the information collected by its ALPRs is accessible through the Flock Safety Network, stating, *e.g.*, in its marketing to law enforcement that:

> If you know the specific license plate in question, use FlockOS to get a detailed report of the suspect vehicle's history over a given timeframe. Use FlockOS's local and national search network to find the suspect vehicle across state lines, including up to 1 billion monthly plate reads. All this is included, for FREE, for any Flock Safety customer.[26]

61.     Moreover, through its *Convoy Analysis* feature, Flock also allows users to identify vehicles that are often seen together. As a result, Flock not only tracks where individuals go, but also who they meet.[27]

62.     While Flock customers can opt-out of sharing ALPR information with Flock, individuals do not have that option, and Flock heavily encourages its customers to provide their records, including by conditioning access to other features on granting access to ALPR data. Indeed, customers like Defendants who, upon information and belief, share ALPR information with Flock, are able to benefit from its mass surveillance apparatus. For example, through Flock's *Hot List* feature, Flock customers that share their ALPR information can get alerts when a vehicle on the Federal Bureau of Investigation's National Crime Information Center (NCIC) list is detected in their area, even if it is detected by another Flock customer's ALPR.[28]

63.     Thus, Flock customers, like Defendants, make a conscious, self-interested choice to

---

[26] *See Fast-Growing Company Flock is Building a New AI-Driven Mass-Surveillance System*, ACLU (Mar. 1, 2022), *available online at: https://www.aclu.org/publications/fast-growing-company-flock-building-new-ai-driven-mass-surveillance-system* (last accessed Aug. 20, 2025).

[27] Ben Miller, *Flock Safety Gives Users Expanded Vehicle Location Abilities*, GOVTECH (Sep. 1, 2021), https://www.govtech.com/biz/flock-safety-gives-users-expanded-vehicle-location-abilities (last accessed Aug. 20, 2025).

[28] Chad Marlow and Jay Stanley, *How to Pump the Brakes on Your Police Department's Use of Flock's Mass Surveillance License Plate Readers*, ACLU (Feb. 13, 2023), https://www.aclu.org/news/privacy-technology/how-to-pump-the-brakes-on-your-police-departments-use-of-flocks-mass-surveillance-license-plate-readers (last accessed Aug. 20, 2025).

participate in Flock's mass surveillance apparatus in exchange for benefiting from information collected by other members of that apparatus. Accordingly, by posting Flock ALPRs on its properties and sharing the information captured by those ALPRs with Flock, Defendants chose to provide a record of *each and every* driver that traveled within the vicinity of the ALPRs for use in a mass surveillance enterprise. In exchange, Defendants benefit through receiving the inherently valuable Vehicle Tracking Data collected by ALPRs on other Flock customers' properties.

### iii.    Flock's Mass Surveillance is a Privacy Nightmare.

64.    Flock's mass surveillance operates on a massive scale, made possible only by the thousands of entities like Defendants that are willing to install Flock's ALPRs on their properties. According to public reporting, there are ***at least 80,000*** active Flock ALPRs surreptitiously tracking Americans across the United States. Through this massive camera network, Flock represents that it collects ***20-billion*** individual records per month.[29]

65.    Flock's ALPRs are designed to be relatively small and not visually prominent, nor do they advertise their function, as shown in Figures 3 and 4 below.[30] Thus, absent a publicly posted notice regarding an operator's or end-user's ALPR usage and privacy policy, individuals tracked by Flock's ALPRs have no way of knowing the function of the devices, nor the extent to which their movements are being tracked.

---

[29] *National LPR Network*, FLOCK, https://www.flocksafety.com/products/national-lpr-network (last accessed Aug. 20, 2025).

[30] Figure 3: *The Oaklandside*, "What are Flock cameras, and why are they controversial in Oakland?" https://oaklandside.org/2025/11/20/flock-safety-cameras-oakland-license-plate-readers/ (last accessed March 9, 2026).

Figure 4: *KPBS News*, "San Diego County police agencies access many private license plate readers with minimal oversight," https://www.kpbs.org/news/public-safety/2025/11/20/san-diego-county-police-agencies-access-many-private-license-plate-readers-with-minimal-oversight (last accessed March 9, 2026).





*Figures 3 & 4. Flock ALPRs.*

66.     Flock does not provide a public directory of its ALPR locations to aid individuals who may want to avoid its mass surveillance. To the contrary, Flock actively tries to hinder the general public from learning of its widespread tracking through the use of cease-and-desist letters to people who try to catalog the locations of their ALPRs.

67.     Additionally, in certain areas it is extremely difficult, if not impossible, to entirely avoid having one's Vehicle Tracking Data captured by a Flock ALPR, even when just driving on public roads and never interacting with a Flock customer. Indeed, Flock's vast network of ALPRs monitor not just a

customer's private property, but also the public roads adjacent to those properties. This means that even if you do not interact with a specific Flock customer, or even enter that customer's property, in some areas private citizens are unable to avoid having their movements tracked and loaded into the Flock Safety Network. This means that, in some places, it is not even theoretically possible for someone to "opt out" of tracking.

68.    As would be expected, this massive, surreptitious surveillance of private citizens has led to repeated abuse, *e.g.*:

a.    A police chief and an officer (in different departments) in Kansas used Flock to stalk their ex-romantic partners;[31]

b.    A Texas sheriff searched 6,809 different Flock camera networks to identify a woman who had an abortion, including unlawfully accessing video records from states in which abortion is protected;[32]

c.    A U.S. Customs and Border Protection's vendor was hacked and license plate images of thousands of travelers at border crossings became available on the dark web;[33]and

d.    The U.S. Cybersecurity and Infrastructure Security Agency issued an alert after discovering a "low attack complexity" vulnerability in ALPRs sold by Motorola Solutions, one of the biggest players in the industry.[34]

---

[31] *See* Michel Stavola, *Kansas police chief used Flock license plate cameras 164 times to track ex-girlfriend*, THE WICHITA EAGLE (Aug. 17, 2024), *available online at:* www.kansas.com/news/politics-government/article291059560.html (last accessed Aug. 20, 2025).

[32] *See* Rindala Alajaji*, She Got an Abortion. So A Texas Cop Used 83,000 Cameras to Track Her Down*, ELECTRONIC FRONTIER FOUNDATION (MAY 30, 2025), https://www.eff.org/deeplinks/2025/05/she-got-abortion-so-texas-cop-used-83000-cameras-track-her-down (last accessed Aug. 20, 2025).

[33] *See* Drew Harwell and Geoffrey A. Fowler, *U.S. Customs and Border Protection says photos of travelers were taken in a data breach*, THE WASHINGTON POST (June 10, 2019) www.washingtonpost.com/technology/2019/06/10/us-customs-border-protection-says-photos-travelers-into-out-country-were-recently-taken-data-breach/ (last accessed Aug. 20, 2025).

[34] *See Motorola Solutions Vigilant License Plate Readers*, CISA (June 13, 2024), *available online* at: https://www.cisa.gov/news-events/ics-advisories/icsa-24-165-19 (last accessed Aug. 20, 2025).

69.     Yet, despite vigorous criticism from a multitude of reputable organizations,[35] Flock's surveillance apparatus is only growing more invasive.

70.     No longer satisfied with meticulously tracking vehicles, Flock has turned its attention toward granular surveillance of individuals with its new *Flock Freeform* tool. As shown in the below screenshot ("Figure 5"),[36] *Flock Freeform* allows users to describe a target individual in natural language and review corresponding results from across Flock's ALPR network of at least 80,000 cameras.



*Figure 5. Demonstration of Flock Freeform tool from Flock website.*

71.     Thus, if companies like Defendants continue to choose to sacrifice their communities' privacy to gain access to the Flock Safety Network, more and more Americans will find themselves unable to escape perpetual surveillance by private, for-profit companies and those companies' customers.

---

[35] *See, e.g.*, Sarah Hamid and Rindala Alajaji, *Flock Safety's Feature Updates Cannot Make Automated License Plate Readers Safe*, ELECTRONIC FRONTIER FOUNDATION (June 27, 2025), https://www.eff.org/deeplinks/2025/06/flock-safetys-feature-updates-cannot-make-automated-license-plate-readers-safe (last accessed Aug. 20, 2025); Jay Stanley, *Fast-Growing Company Flock is Building a New AI-Driven Mass-Surveillance System*, ACLU (March 3, 2022), *available online at*: https://www.aclu.org/wp-content/uploads/publications/flock_1.pdf (last accessed Aug. 20, 2025).

[36] Reproduced from: *Flock Freeform*, FLOCK, https://www.flocksafety.com/products/flock-freeform (last accessed Aug. 20, 2025).

**D. DEFENDANTS TRACKED PLAINTIFFS AND CLASS MEMBERS THROUGH USE OF FLOCK'S ALPR TECHNOLOGY WITHOUT THEIR KNOWLEDGE OR CONSENT**

72.    Defendants installed Flock's ALPRs across many, if not all, of its Lowe's properties in California. As a result, Plaintiffs and Class Members were tracked by the ALPRs while visiting Defendants' Lowe's properties, which transmitted their Vehicle Tracking Data, including pictures of their vehicles, their likeness, other automatically generated information relating to their vehicles, the identities of their associates, and their location to Flock, where it was then catalogued in Flock's voluminous vehicle tracking records across its Flock Safety Network.

73.    Defendants failed to publicly provide the proper statutorily required notice to Plaintiffs and Class Members, via the Lowe's website, that when Plaintiffs and Class Members visited Defendants' Lowe's locations, or even just drove near Defendants' Lowe's locations, Defendants would record Plaintiffs' and Class Members' Vehicle Tracking Data, including location, images, and individualized vehicle information, and transmit that data to Flock for consolidation with any other Vehicle Tracking Data records pertaining to Plaintiffs and Class Members gathered from at least 80,000 other Flock ALPRs installed across the United States. While Defendants did post an ALPR Usage and Privacy Policy on the Lowe's website, as explained in Section G, *infra*, Defendants' posted ALPR policy was woefully deficient and failed to comply with the ALPR Law, as well as the posted policy entirely deprived Plaintiffs and Class Members of their right to know exactly how Defendants collected, used, maintained, and shared their Vehicle Tracking Data.

74.    Defendants' unauthorized and illegal recording of Plaintiffs' and Class Members' Vehicle Tracking Data, without proper public notice, includes not only a snapshot of their vehicles, but also a wide range of automatically generated identification information, including the vehicle's license plate number, make, model, body, state of registration, the date and time it was recorded, and a list of other records of the same vehicle.

75.     Plaintiffs and Class Members' movements and information were illegally recorded by Defendants, combined with other information gathered across other Flock ALPRs, and then stored in the Flock Safety Network where each record pertaining to a given individual or vehicle could be related to all others, thus creating a continuous record of Plaintiffs and Class Members' movement through areas where Flock ALPRs are present.

76.     As such, each time Plaintiffs and Class Members visited Defendants' Lowe's properties since Defendants' installation of Flock ALPRs, Plaintiffs and Class Members were unaware that their Vehicle Tracking Data, including their location, movements, and vehicle information, were being tracked, recorded, and shared by Defendants with unauthorized parties.

77.     Plaintiffs and Class Members never authorized Defendants to collect or disclose any information about them, including ALPR-collected information subject to the California ALPR Law.

**E. DEFENDANTS WERE ENRICHED BY ITS CONTRIBUTION TO THE MASS SURVEILLANCE OF PLAINTIFFS AND CLASS MEMBERS**

78.     As explained, *supra*, users of Flock ALPRs receive access to inherently valuable Vehicle Tracking Data from other Flock customers' ALPRs in exchange for sharing their own information to the Flock Safety Network.

79.     Upon information and belief, Defendants made a conscious, self-interested choice to participate in Flock's mass surveillance apparatus in exchange for benefiting from information collected by other members of that apparatus.

80.     Accordingly, by installing Flock ALPRs on its properties and sharing the information captured by those ALPRs with Flock, Defendants chose to provide a record of *each and every* driver that traveled within the vicinity of the ALPRs for use in Flock's mass surveillance enterprise in exchange for valuable data collected by ALPRs on other Flock customers' properties.

81.     In other words, Defendants were enriched in the form of being granted access to the Flock

Safety Network database in exchange for allowing Flock to access the records created by the ALPRs installed on its own properties.

### F. PLAINTIFFS' AND CLASS MEMBERS' REASONABLE EXPECTATION OF PRIVACY

82.    At all times, Plaintiffs and Class Members had a reasonable expectation Defendants would not track and record their location and movement for use in a massive surveillance apparatus like the one created by Flock and perpetuated by Defendants' participation.

83.    Privacy polls consistently show that Americans overwhelmingly consider their location information to be among the most sensitive facets of their life.

84.    For example, one poll found that 78-percent of Americans believe that Congress should "strengthen privacy protections for people in the U.S. against warrantless government surveillance of their…location information" (as opposed to 9-percent against).[37] Likewise, in another survey, 88-percent of Americans stated that "not having someone watch you or listen to you without your permission" was important to them, with 72-percent rating it as "very important."[38]

85.    Personal privacy and informed consent are material to Plaintiffs and Class Members, as also demonstrated by the California Legislature's requirement in the ALPR Law that any end-user of an ALPR camera or system provide public notice of the same.

### G. DEFENDANTS VIOLATED CONSUMER PRIVACY UNDER CALIFORNIA LAW AND FAILED TO ADHERE TO CALIFORNIA'S ALPR LAW

86.    The ALPR Law, codified at Cal. Civ. Code §§ 1798.90.51(a) and 1798.90.53(a), required

---

[37] *YouGov Mass Surveillance Debate Polling*, DEMAND PROGRESS EDUCATION FUND (Dec. 14, 2023), https://demandprogresseducationfund.org/new-polling-as-mass-surveillance-debate-reaches-final-stages-in-congress-americans-demonstrate-overwhelming-support-for-increased-privacy-protections/ (last accessed Aug. 20, 2025).

[38] Mary Madden and Lee Rainie, Americans' Attitudes About Privacy, Security and Surveillance, PEW RESEARCH CENTER (May 20, 2015), https://www.pewresearch.org/internet/2015/05/20/americans-attitudes-about-privacy-security-and-surveillance/ (last accessed Aug. 20, 2025).

Defendants, as ALPR operators and end-users to, among other things, "[m]aintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." *Id.*

87.    These reasonable security procedures and practices required Defendants to implement an ALPR usage and privacy policy, "in order to ensure that the access, use, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties." Cal. Civ. Code §§ 1798.90.51(b); 1798.90.53(b).

88.    Moreover, as specifically set forth, *supra*, the ALPR Law's ALPR usage requirements command that ALPR operators and end-users, such as Defendants, "at minimum," must implement and publicly post a privacy policy with regards to its ALPR use that informs the public with regard to Defendants' purposes for accessing and using ALPR information, list the job title and training for individuals who will have access to the ALPR information, inform individuals how long their ALPR information will be retained, and also describe how the ALPR system will be monitored for compliance with all applicable privacy laws, among other things. *See* Cal. Civ. Code §§ 1798.90.51(b)(2)(A)-(G); 1798.90.53(b)(2)(A)-(G).

89.    In establishing these specific requirements governing operators and end-users with regard to their ALPR use, the Legislature expressly provided that such requirements enumerated in Cal. Civ. Code §§ 1798.90.51(b)(2)(A)-(G) and 1798.90.53(b)(2)(A)-(G) constitute the "***minimum***" safeguards necessary to protect individuals' privacy and civil liberties. Accordingly, any failure to comply with or meet these minimum statutory requirements is a violation of the ALPR Law. Cal. Civ. Code §§ 1798.90.51(b)(2)(A)-(G); 1798.90.53(b)(2)(A)-(G).

90.    While Defendants did post an ALPR Usage and Privacy Policy on the Lowe's website, Defendants' posted ALPR policy was woefully deficient and failed to comply with California law, as the

posted policy entirely deprived Plaintiffs and Class Members of their right to know exactly how Defendants' collected, used, maintained, and shared their Vehicle Tracking Data, and failed to meet the specifically enumerated minimum requirements found in Cal. Civ. Code §§ 1798.90.51(b)(2)(A)-(G) and 1798.90.53(b)(2)(A)-(G).[39]

91.    First, for both operators and end-users, the ALPR Law requires Defendants' ALPR usage and privacy policy to state the "authorized purposes for using the ALPR system and collecting ALPR information." Cal. Civ. Code §§ 1798.90.51(b)(2)(A); 1798.90.53(b)(2)(A). Here, while Defendants' policy states that ALPR data is used for "limited, authorized purposes,"[40] including security, fraud prevention, parking enforcement, and safety, this language is facially deficient for a number of reasons. Defendants' policy fails to define what constitutes an "authorized" purpose, who determines such authorization, or what limitations govern such use. Moreover, the enumerated purported purposes, such as "security" and "safety," are vague, overbroad, and effectively limitless, permitting virtually any use of ALPR information. Further, Defendants' policy fails to articulate any process or restrictions governing such use, as required by the ALPR Law. Defendants' policy entirely deprives individuals of their right to know the exact purposes for when, how, and who has access to and uses their ALPR information. Accordingly, Defendants' statement of "authorized purposes" does not satisfy the statute's requirement of a defined and limited usage policy.

92.    Next, for both operators and end-users, the ALPR Law requires identification of "[t]he

---

[39] Although the statutory provisions governing ALPR operators and end users contain minor variations in wording, the substantive requirements imposed by the ALPR Law are materially identical and impose the same core obligations with respect to privacy, security, and data handling. *See* Cal. Civ. Code §§ 1798.90.51(b)(2)(A)-(G); 1798.90.53(b)(2)(A)-(G). Because the statutory requirements applicable to ALPR operators and end users are materially identical, Plaintiffs' quotes throughout this section cite to § 1798.90.51 for convenience, except where distinctions are relevant.

[40] *Lowe's U.S. Privacy Statement*, LOWE'S, https://www.lowes.com/l/about/privacy-and-security-statement (last accessed April 2, 2026).

title of the official custodian, or owner, of the ALPR system responsible for implementing this section." Cal. Civ. Code §§ 1798.90.51(b)(2)(E); 1798.90.53(b)(2)(E). Here, while Defendants' policy identifies a "Vice President of Asset Protection"[41] as the purported custodian of the ALPR system, this designation is insufficient to satisfy the statute. The policy merely states that this individual is responsible for "overseeing" ALPR systems and "ensuring compliance,"[42] but fails to identify the custodian as the official responsible for implementing the ALPR policy as required by Cal. Civ. Code §§ 1798.90.51(b)(2)(E) and 1798.90.53(b)(2)(E). Furthermore, Defendants' vague policy fails to describe the custodian's duties, authority, or role in implementing the statute's specific requirements, rendering the designation conclusory and inadequate.

93.    The statute further requires ALPR operators and end-users to inform visitors with regard to "the length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information." Cal. Civ. Code §§ 1798.90.51(b)(2)(G); 1798.90.53(b)(2)(G). Here, Defendants' policy inadequately states that Defendants will retain ALPR information for "typically no more than 90 days," but may be retained longer where "needed for an active investigation or to comply with a legal obligation."[43] Defendants' language with this regard is entirely deficient, as Defendants fail to satisfy the requirements of the statute in that its open-ended language provides no actual retention period, and is the very kind of non-answer the Legislature designed the statute to prohibit. As expressly written the statute, the ALPR Law requires Defendants to provide the public with a defined timeframe for their retention of ALPR information, not a discretionary standard that effectively permits indefinite retention.

---

[41] *Lowe's U.S. Privacy Statement*, Lowe's, https://www.lowes.com/l/about/privacy-and-security-statement (last accessed April 2, 2026).
[42] *Id.*
[43] *Lowe's U.S. Privacy Statement*, Lowe's, https://www.lowes.com/l/about/privacy-and-security-statement (last accessed April 2, 2026).

94.     Additionally, the statute requires operators and end-users to disclose "the purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information." Cal. Civ. Code §§ 1798.90.51(b)(2)(D); 1798.90.53(b)(2)(D). Here, Lowe's policy states that it does not sell ALPR information and that it shares such information only with law enforcement, "select service providers," and the National Center for Missing and Exploited Children.[44] While this language identifies certain categories of recipients, it fails to satisfy the statute's requirements. The policy does not describe any process governing the sharing or transfer of ALPR information, including how such disclosures are authorized, controlled, or reviewed. Nor does it define "select service providers" or identify the scope of their access. Defendants' policy imposes no meaningful restrictions on the use, retention, or further dissemination of ALPR information by these recipients. Finally, the policy fails to articulate the specific purposes for which ALPR information is shared with each category of recipient. Defendants' unlimited sharing clause is not a "restriction on" data sharing, it is an absence of any restriction, and thus, a violation of the ALPR Law. Cal. Civ. Code §§ 1798.90.51(b)(2)(D); 1798.90.53(b)(2)(D).

95.     Next, the ALPR Law requires operators and end-users to provide "a description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system" and identification of "the training requirements necessary for those authorized employees and independent contractors." Cal. Civ. Code §§ 1798.90.51(b)(2)(B); 1798.90.53(b)(2)(B).

96.     While Defendants' policy states that "Asset Protection associates," "information security staff," and "select service providers" may access ALPR data and that such individuals must complete ALPR training annually,[45] Defendants' broad and vague language fails to satisfy the statute's

---

[44] *Lowe's U.S. Privacy Statement*, LOWE'S, https://www.lowes.com/l/about/privacy-and-security-statement (last accessed April 2, 2026).
[45] *Lowe's U.S. Privacy Statement*, LOWE'S, https://www.lowes.com/l/about/privacy-and-security-statement (last accessed April 2, 2026).

requirements. Defendants' policy does not identify specific, defined roles with access to ALPR systems or data, instead relying on vague and undefined groupings. The term "select service providers" is likewise undefined and provides no clarity as to who may access sensitive ALPR information. Further, the policy provides no description of the substance, scope, or standards of the required training, including its content, duration, or requirements for certification. Accordingly, Defendants' policy fails to adequately disclose the job titles and training requirements of authorized personnel as required by the ALPR Law.

97.    The ALPR Law also requires operators and end-users such as Defendants to provide a "description of how the ALPR system will be monitored to ensure the security of the information accessed or used, and compliance with all applicable privacy laws and a process for periodic system audits." Cal. Civ. Code §§ 1798.90.51(b)(2)(C); 1798.90.53(b)(2)(C). Here, Defendants' policy states that its ALPR systems are "monitored" by its Asset Protection team, that access is "role-based and audited," and that system activity is "regularly reviewed."[46] While these statements reference monitoring and auditing in general terms, they fail to describe any actual monitoring procedures or audit processes. The policy does not explain how monitoring is conducted, what data or activity is reviewed, who performs such reviews, or what protocols govern audits. Nor does it identify any frequency, methodology, or documentation requirements for audits, as required by the statute. Additionally, the policy fails to describe how compliance with applicable privacy laws is ensured, instead offering only conclusory assurances that data is handled "properly and lawfully." Finally, the policy's reference to monthly validation of system accuracy relates to data performance, not monitoring or auditing, and does not satisfy the statute's requirement of a defined monitoring and audit process. Accordingly, Defendants'

---

[46] *Lowe's U.S. Privacy Statement*, LOWE'S, https://www.lowes.com/l/about/privacy-and-security-statement (last accessed April 2, 2026).

policy fails to comply with the ALPR Law.

98.    The ALPR Law also requires operators and end-users to provide the public with "a description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors." Cal. Civ. Code §§ 1798.90.51(b)(2)(F); 1798.90.53(b)(2)(F). Defendants' policy states that it takes "reasonable steps" to ensure accuracy, that ALPR matches are verified with additional evidence before being used in investigations, and that errors are "corrected or removed promptly." [47] While this language references general accuracy measures, it fails to describe any actual process for identifying, reviewing, or correcting erroneous ALPR data. The policy does not explain how errors are detected, who is responsible for reviewing and correcting such errors, or what procedures govern the correction or removal of inaccurate data. Nor does it provide any mechanism for individuals to challenge or report inaccuracies. Accordingly, Defendants' policy fails to satisfy the ALPR Law's requirement of a described process for ensuring accuracy and correcting errors.

99.    Accordingly, as outlined and detailed above, Defendants' posted privacy policy does not include, meet, or adhere to the mandatory elements required the ALPR Law. Defendants' posted policy is a non-compliant policy in violation of the ALPR Law, and fails to adequately inform the public of Defendants' collection, use, and tracking of Vehicle Tracking Data.

100.    Defendants failed to meet the requirements of the ALPR Law by failing to maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure.

101.    Furthermore, Defendants failed to implement, post, or adhere to the ALPR Law's usage

---

[47] *Lowe's U.S. Privacy Statement*, LOWE'S, https://www.lowes.com/l/about/privacy-and-security-statement (last accessed April 2, 2026).

requirements, in that Defendants failed to properly implement or post an ALPR privacy policy compliant with California law.

102. Accordingly, Defendants failed to ensure that the access, use, sharing, and dissemination of Plaintiffs' and Class Members' ALPR information was consistent with respect for individuals' privacy and civil liberties. Cal. Civ. Code § 1798.90.51(b); Cal. Civ. Code § 1798.90.53(b).

**TOLLING AND ESTOPPEL**

103. Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment of its use of Flock ALPRs, and the scope of information that they collected about Plaintiffs and Class Members.

104. As described above, the Flock ALPRs are inconspicuous. A reasonable person without prior knowledge of Flock's products would not understand the function or scope of information collected by an ALPR. At most, the ALPRs look like standard security cameras; nothing about the ALPR's inconspicuous appearance announces that they are capturing license plate information and combining it with data collected by at least 80,000 other similar units being used to track vehicle and individual location data.

105. Defendants were under a statutory duty to disclose the nature, significance, and consequences of its use of the Flock ALPRs. Despite this obligation, Defendants failed to make publicly available proper notice of Defendants' use of ALPR systems on its properties, and additionally, failed to post on its website proper notice, in compliance with the ALPR Law, of Defendants' usage and privacy practices with regard to the ALPRs present on its properties that would have informed Plaintiffs and Class Members that they were being tracked by Flock's surveillance network. By failing to adhere to the duty of disclosure required by the ALPR Law, Defendants concealed its surveillance and Plaintiffs had no way to know that Defendants were aggregating information about them with information from tens

of thousands of other cameras.

106.    Therefore, through no fault or lack of diligence, Plaintiffs and Class Members were deceived and could not reasonably discover Defendants' unlawful conduct. As such, Plaintiffs could not have known the information essential to pursue their claims.

107.    For these reasons, all applicable statutes of limitation have been tolled pursuant to the discovery rule.

108.    The earliest that Plaintiffs or Class Members, acting with due diligence, could have reasonably discovered Defendants' misconduct would have been shortly before the filing of this Complaint.

## CLASS ACTION ALLEGATIONS

109.    This action is brought pursuant to California Code of Civil Procedure § 382 by the named Plaintiffs on their own behalf, and on behalf of a proposed Class of all other persons similarly situated.

110.    Specifically, Plaintiffs propose the following Class, subject to amendment as appropriate:

> All citizens of the State of California who, as a result of Defendants' use of Flock ALPRs, had their Vehicle Tracking Data accessed and/or acquired while visiting Defendants' Lowe's properties located in California and/or while driving within a 75-foot radius of those locations.

111.    Excluded from the Class are Defendants and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members, as well as any claims for personal injury, wrongful death, or other property damage sustained by the Class.

112.    Plaintiffs reserve the right to amend the definitions of the Class or add subclasses if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

113.    **Numerosity.** The Class is so numerous that the individual joinder of all members is impracticable. Upon information and belief, there are at least 1,000 individuals that have been impacted by Defendants' violations. Moreover, the exact number of those impacted is generally ascertainable from information that is in the exclusive control of Defendants.

114.    **Commonality.** Common questions of law or fact arising from Defendants' conduct exist as to all members of the Class, which predominate over any questions affecting only individual Class Members. These common questions include, but are not limited to, the following:

a)    Whether and to what extent Defendants had a duty to maintain the confidentiality of Plaintiffs' and Class Members' Vehicle Tracking Data, including their location, license plate, and vehicle information;

b)    Whether Defendants had duties not to disclose Plaintiffs' and Class Members' Vehicle Tracking Data, including their location, license plate, and vehicle information, to unauthorized third parties;

c)    Whether Defendants adequately, promptly, and accurately informed Plaintiffs and Class Members that their Vehicle Tracking Data, including their location, license plate, and vehicle information, would be disclosed to third parties;

d)    Whether Defendants violated the law by failing to promptly notify Plaintiffs and Class Members that their Vehicle Tracking Data, including their location, license plate, and vehicle information, was being disclosed without their consent;

e)    Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to keep the Plaintiffs' and Class Members' Vehicle Tracking Data, including their location, license plate, and vehicle information, free from unauthorized disclosure;

f)    Whether Defendants violated the California ALPR Law as asserted in this Complaint;

g) Whether Plaintiffs and Class Members are entitled to actual, statutory, punitive, consequential, and/or nominal damages as a result of Defendants' wrongful conduct;

h) Whether Defendants knowingly made false representations as to Defendants' data security and/or privacy practices; and

i) Whether Defendants knowingly omitted material representations with respect to Defendants' data security and/or privacy practices.

115.    **Typicality.** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs were harmed, like every other Class Member, by Defendants' use of the Flock ALPRs.

116.    **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class in that the infringement of the rights and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

117.    **Predominance**. Defendants engaged in a common course of conduct toward Plaintiffs and Class Members in that Plaintiffs and all Class Members were unlawfully tracked by the Flock ALPRs installed on Defendants' properties. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

118.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claim is prohibitively high and would, therefore,

have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

119. Defendants acted on grounds that apply generally to the Class as a whole so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

120. Likewise, particular issues under Cal. Code Civ. Proc. § 382 are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

      a) Whether Defendants adequately and accurately informed Plaintiffs and Class Members that their Vehicle Tracking Data, including their location, license plate, and vehicle information, would be disclosed to third parties, including as required under the California ALPR Law;

      b) Whether Defendants owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding Vehicle Tracking Data, including their location, license plate, and vehicle information, and not disclosing it to unauthorized third parties;

      c) Whether Defendants breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Vehicle Tracking Data, including their location, license plate, and vehicle information; and

      d) Whether Plaintiffs and Class Members are entitled to actual, statutory, punitive,

consequential, and/or nominal damages as a result of Defendants' wrongful conduct.

121.    Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' private information for individuals affected by the unauthorized disclosures that have taken place.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF CALIFORNIA'S ALPR LAW
### Cal. Civ. Code § 1798.90.5, *et seq.*
### *(On Behalf of Plaintiffs and the Class)*

122.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-12, 13-33, 38-43, 44-52, 53-71, 72-77, 78-81, 82-85, 86-102, 103-108, and 109-121 as if fully set forth herein.

123.     The California ALPR Law, Cal. Civ. Code § 1798.90.5, *et seq.*, regulates the private use of ALPR devices by "ALPR operator[s]," defined as "a person that operates an ALPR system," and "ALPR end-user[s]," defined as "a person that accesses or uses an ALPR system."[48]

124.    Because Defendants own, operate, and control the physical properties at which ALPR cameras are deployed, and likewise, installed, accessed, and used Flock ALPRs on its properties, Defendants were required to abide by California's ALPR Law as both ALPR operators and end-users.

125.    Under the ALPR Law, ALPR operators and end-user must:

Implement a usage and privacy policy in order to ensure that the access, use, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties. The usage and privacy policy shall be available to the public in writing, and, if the ALPR end-user has an Internet Web site, the usage and privacy policy shall be posted conspicuously on that Internet Web site.[49]

126.    Defendants violated the ALPR Law. First, Defendants did not properly implement a

---

[48] Cal. Civ. Code § 1798.90.5(a), (c).
[49] Cal. Civ. Code §§ 1798.90.51(b)(1); 1798.90.53(b)(1).

usage and privacy policy regarding its use of ALPR information or make it publicly available, including on its website, let alone a policy that satisfied the requirements of the ALPR Law.[50]

127.    This failure of Defendants to properly draft and public provide a privacy policy relating to the ALPR data, post the privacy policy on its website, and adhere to the privacy policy for the benefit of Plaintiffs and Class Members, is inconsistent with Plaintiffs' and Class Members' individual privacy and civil liberties in that it deprived them of their statutory right to know.

128.    The ALPR Law has been in effect for over ten years and was passed long before Defendants implemented its use of ALPRs.  As such, Defendants either knew or should have known about the Law's privacy policy requirements (either through its own research or from Flock), yet Defendants failed to implement and publicly post the required policy which adhered to the enumerated conditions for ALPR operators and end-users. Therefore, Defendants acted either willfully or recklessly in disregard of the ALPR Law.

129.    As a result of Defendants' violation of the ALPR law, and pursuant to Cal. Civ. Code § 1798.90.54, Plaintiffs and each Class Member are entitled to (i) the greater of their actual damages or statutory liquidated damages of $2,500; (ii) punitive damages; (iii) reasonable attorneys' fees and other litigation costs; and (iv) other preliminary and equitable relief as the Court determines to be appropriate.[51]

**COUNT II**
**INVASION OF PRIVACY UNDER CALIFORNIA'S CONSTITUTION**
**Cal. Const. Art. 1, § 1**
**_(On Behalf of Plaintiffs and the Class)_**

130.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-12, 13-33, 38-43,

---

[50] Cal. Civ. Code § 1798.90.51(b)(2); 1798.90.53(b)(2) (listing required information to be included in ALPR usage and privacy policy).
[51] Cal. Civ. Code § 1798.90.54(b).

44-52, 53-71, 72-77, 78-81, 82-85, 86-102, 103-108, and 109-121as if fully set forth herein.

131. Article I, section 1 of the California Constitution provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and *privacy*."

132. The right to privacy in California's constitution creates a private right of action against private and government entities.

133. To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy, and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

134. Defendants violated Plaintiffs' and Class Members' constitutional right to privacy by recording, collecting, storing, aggregating, and disseminating Plaintiffs' and Class Members' Vehicle Tracking Data.

135. Defendants' unlawful conduct knowingly facilitated the recording, tracking, monitoring, and aggregation of Plaintiffs' and Class Members' vehicle's movements through areas monitored, captured, collected, and/or aggregated by ALPRs and related systems.

136. Defendants' use and installation of Flock ALPRs at Defendants' locations facilitated the aggregation and long-term tracking of Plaintiffs' and Class Members' individual movements, as Defendants' use of Flock's pervasive network of tens of thousands of ALPRs and aggregation of data across Flock's network created comprehensive movement profiles of Plaintiffs and Class Members.

137. Plaintiffs and Class Members have a legally protected privacy interest in their Vehicle Tracking Data when that information is aggregated and used to track their movements, for which they

had a reasonable expectation of privacy, which Defendants violated when Defendants surreptitiously recorded and provided to Flock for upload to the Flock Safety Network knowing that it would be aggregated, analyzed, tracked, and combined with other records Flock maintains regarding Plaintiffs and the Class Members.

138.   Accordingly, Defendants' actions were performed in a manner that was highly offensive to Plaintiffs and Class Members and were an egregious violation of social norms.

139.   Defendants have intruded upon Plaintiffs' and Class Members' legally protected privacy interests, including interests in precluding the aggregation, analyzation, tracking, and dissemination or misuse of their personal movements and private affairs, through Defendants' monitoring, capturing, collecting, and aggregating Plaintiffs' and Class Members' Vehicle Tracking Data.

140.   Plaintiffs and Class Members had a reasonable expectation of privacy in their Vehicle Tracking Data.  Plaintiffs and Class Members did not consent to or otherwise authorize Defendants to capture, collect, monitor, aggregate, or disclose their Vehicle Tracking Data.

141.   Defendants invaded Plaintiffs' and Class Members' privacy by capturing, collecting, monitoring, aggregating, and disclosing, without prior statutorily required notice and without authorization, Plaintiffs' and Class Members' Vehicle Tracking Data to Flock. Specifically, Defendants' use and installation of Flock ALPRs at on Defendants' properties allowed for the long-term tracking of Plaintiffs' and Class Members' individual movements on Defendants' properties through Defendants' integration with Flock's pervasive Flock Safety Network, which is made up of data tracked and aggregated by tens of thousands of other Flock ALPRs to create comprehensive movement profiles of individuals, including Plaintiffs and Class Members.

142.   Plaintiffs and Class Members did not reasonably expect Defendants would commit such acts in violation of their privacy.

143.    As a direct and proximate result of Defendants' invasion of their privacy, Plaintiffs and Class Members have been damaged and have suffered actual and concrete injuries, including the diminution of value of their private information, the loss of valuable privacy rights and protections, heightened stress, fear, anxiety, risk of future invasions of privacy and the mental and emotional distress and harm to human dignity interests.

144.    Plaintiffs and Class Members are entitled to appropriate relief, including damages to compensate them for such harms, and hereby seek appropriate relief including, but not limited to, damages that will reasonably compensate Plaintiffs and Class Members for the aforementioned harms to their privacy interests, as well as nominal damages and/or disgorgement of profits made by Defendants as a result of Defendants' intrusions upon Plaintiffs' and Class Members' privacy.

145.    Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful and intentional nature of Defendants' actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendants from engaging in such conduct in the future.

## COUNT III
### COMMON LAW INVASION OF PRIVACY
### *(On Behalf of Plaintiffs and the Class)*

146.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-12, 13-33, 38-43, 44-52, 53-71, 72-77, 78-81, 82-85, 86-102, 103-108, and 109-121 as if fully set forth herein.

147.    Plaintiffs and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their confidential information, including their Vehicle Tracking Data; and (2) making personal travel decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to travel and associate lawfully with others without being subjected to surveillance absent Plaintiffs' and Class Members' knowledge or consent.

148. Defendants' disclosure of Plaintiffs' and Class Member's Vehicle Tracking Data, without the knowledge and informed consent of Plaintiffs and Class Members and in violation of the ALPR Law is an intentional intrusion on Plaintiffs' and Class Members' solitude or seclusion.

149. Plaintiffs and Class Members had a reasonable expectation of privacy in their personal and private affairs and movements, which includes the expectation that their Vehicle Tracking Data would be protected from surreptitious disclosure to third parties and the aggregation of data which would allow third parties to track their movements.

150. Defendants' repeated acquisition, disclosure, and aggregation of Plaintiffs' and Class Members' Vehicle Tracking Data, and Defendants' inclusion in a large surveillance database that permits near constant tracking of a person's movements, is highly offensive to the reasonable person.

151. As a result of Defendants' actions, Plaintiffs and Class Members have suffered harm and injury including, but not limited to, an invasion of their privacy rights.

152. As a direct and proximate result of Defendants' invasion of their privacy, Plaintiffs and Class Members have been damaged and have suffered actual and concrete injuries, including the diminution of value of their private information, the loss of valuable privacy rights and protections, heightened stress, fear, anxiety, risk of future invasions of privacy and the mental and emotional distress and harm to human dignity interests.

153. Plaintiffs and Class Members are entitled to appropriate relief, including damages to compensate them for such harms, and hereby seek appropriate relief including, but not limited to, damages that will reasonably compensate Plaintiffs and Class Members for the aforementioned harms to their privacy interests, as well as nominal damages and/or disgorgement of profits made by Defendants as a result of Defendants' intrusions upon Plaintiffs' and Class Members' privacy.

154. Plaintiffs and Class Members are also entitled to punitive damages resulting from the

malicious, willful and intentional nature of Defendants' actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendants from engaging in such conduct in the future.

155.    Plaintiffs also seek such other relief as the Court may deem just and proper.

## COUNT IV
## UNJUST ENRICHMENT
### *(On Behalf of Plaintiffs and the Class)*

156.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-12, 13-33, 38-43, 44-52, 53-71, 72-77, 78-81, 82-85, 86-102, 103-108, and 109-121 as if fully set forth herein.

157.    Defendants acquired Plaintiffs' and Class Members' inherently valuable Vehicle Tracking Data, through inequitable means, including through the surreptitious use of Flock ALPR systems, in that it failed to properly and publicly disclose such use in violation of the ALPR Law, as previously alleged.

158.    Thus, Plaintiffs and Class Members unknowingly provided their inherently valuable Vehicle Tracking Data to Defendants, which then enriched Defendants as operators and end-users of Flock ALPRs receive access to inherently valuable information from other Flock customers' ALPRs in exchange for sharing their own information to the Flock Safety Network.

159.    Upon information and belief, Defendants made a conscious, self-interested choice to participate in Flock's mass surveillance apparatus in exchange for benefiting from information collected by other members of that apparatus.

160.    By installing Flock ALPRs on Defendants' properties and sharing the information captured by those ALPRs with Flock, Defendants chose to provide a record of each and every driver that traveled within the vicinity of the ALPRs for use in Flock's mass surveillance enterprise in exchange for valuable data collected by ALPRs on other Flock customers' properties.

161.    Defendants were enriched in the form of being granted access to the Flock Safety Network database in exchange for allowing Flock to access the records created by the ALPRs installed on Defendants' own properties.

162.    Indeed, Defendants calculated to avoid Defendants' privacy obligations at the expense of Plaintiffs and Class Members who, as a result, suffered as a direct and proximate result of Defendant's misconduct.

163.    If Plaintiffs and Class Members had known that Defendants were utilizing Flock ALPRs and sharing the inherently valuable Vehicle Tracking Data with third parties, they would not have frequented Defendants' establishments and Defendants would not have been able to acquire their inherently valuable Vehicle Tracking Data.

164.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the benefits it gained at the expense of Plaintiffs and Class Members. As a result of Defendants' wrongful conduct, as alleged above, Plaintiffs and Class Members are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendants, plus attorneys' fees, costs, and interest thereon.

165.    Plaintiffs and Class Members are entitled to appropriate relief, including damages to compensate them for such harms, and hereby seek appropriate relief including, but not limited to, damages that will reasonably compensate Plaintiffs and Class Members for the aforementioned harms to their privacy interests, as well as nominal damages and/or disgorgement of profits made by Defendants as a result of Defendants' intrusions upon Plaintiffs' and Class Members' privacy.

166.    Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful and intentional nature of Defendants' actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendants from

engaging in such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment against Defendants as follows:

A. An Order certifying the Class, and appointing the Plaintiffs and their Counsel to represent the Class;

B. Equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the location and license plate information of Plaintiffs and Class Members;

C. Injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members;

D. An award of all damages available at equity or law, including, but not limited to, actual, consequential, punitive, statutory and nominal damages, as allowed by law in an amount to be determined;

E. An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. Pre-judgment interest on all amounts awarded; and

G. All such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and members of the proposed Class, hereby demand a jury trial on all issues so triable.

DATED:   April 2, 2026                    Respectfully submitted,

                                          *s/ Michael Connett*

                                          Michael Connett (SBN 300314)
                                          Tyler J. Bean
                                          Albert J. Asciutto
                                          **SIRI & GLIMSTAD LLP**
                                          700 S. Flower Street, Suite 1000
                                          Los Angeles, California 90017
                                          (772) 783-8436
                                          mconnett@sirillp.com
                                          tbean@sirillp.com

aasciutto@sirillp.com

*Attorneys for Plaintiffs and the Proposed Class*

CM-010

| | | |
|---|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** | STATE BAR NUMBER: 300314 | **FOR COURT USE ONLY** |

NAME: Michael Connett
FIRM NAME: SIRI & GLIMSTAD LLP
STREET ADDRESS: 700 S. Flower Street, Suite 1000
CITY: Los Angeles      STATE: CA      ZIP CODE: 90017
TELEPHONE NO.: (772) 783-8436      FAX NO.:
EMAIL ADDRESS: mconnett@sirillp.com
ATTORNEY FOR (name): ASHLEY GRIMES and CAMERON DIEGLE

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
04/02/2026
By: _____ Deputy
V. Bloxson

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**
STREET ADDRESS: 720 9th Street
MAILING ADDRESS: 720 9th Street
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: Gordon D. Schaber Sacramento County Courthouse

CASE NAME:
Ashley Grimes and Cameron Diegle v. Lowe's Home Centers, LLC and Lowe's Companies, Inc.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000)    [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 26CV008109<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Asbestos**
[ ] Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/Unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[x] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Employment Development Department (EDD)**
[ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Comprehensive groundwater adjudication (47)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (*not specified above*) (43)

Judicial Council of California, courts.ca.gov
Rev. January 1, 2026, Mandatory Form
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Stds. Jud. Admin., std. 3.10
**Civil Case Cover Sheet**
CM-010, Page 1 of 3 →

2. Is this case complex under rule 3.400 of the California Rules of Court?    [x] Yes    [ ] No

If the case is complex, mark the factors requiring exceptional judicial management:

a. [ ] Large number of separately represented parties

b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

c. [x] Substantial amount of documentary evidence

d. [x] Large number of witnesses

e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply):

a. [x] monetary

b. [x] nonmonetary; declaratory or injunctive relief

c. [x] punitive

4. Number of causes of action (specify): FOUR

5. Is this case a class action suit?    [x] Yes    [ ] No

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: April 2, 2026

Michael Connett                                           ▶ /s/ Michael Connett
_____                          _____
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

### NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

### INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**

Rev. January 1, 2026                    **Civil Case Cover Sheet**                    **CM-010**, Page 2 of 3

CM-010

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/
Wrongful Death
Uninsured Motorist (46) *(if the case involves
an uninsured motorist claim subject to
arbitration, check this item instead of Auto)*
**Asbestos**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Product Liability *(not asbestos or toxic/
environmental)* (24)
Medical Malpractice (45)
Medical Malpractice—Physicians &
Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g.,
assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest)
*(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not
medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not
unlawful detainer or wrongful eviction)*
Contract/Warranty Breach—Seller Plaintiff
*(not fraud or negligence)*
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book
accounts) (09)
Collections Case—Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord-tenant, or
foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs,
check this item; otherwise, report as
Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition re Arbitration Award (11)
Writ of Mandate (02)
Writ—Administrative Mandamus
Writ—Mandamus on Limited Court Case
Matter
Writ—Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal—Labor Commissioner
Appeals
**Employment Development Department (EDD)**
EDD Decision Review (48) *(if the case
involves an Employment Development
Department decision, check this item
instead of Wrongful Termination or Other
Employment)*

**Provisionally Complex Civil Litigation (Cal.
Rules of Court, rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Comprehensive Groundwater Adjudication
(47)
Insurance Coverage Claims *(arising from
provisionally complex case type listed
above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic
relations)*
Sister-State Judgment
Administrative Agency Award *(not unpaid
taxes)*
Petition/Certification of Entry of Judgment
on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only Injunctive Relief
Only *(non-harassment)*
Mechanic's Lien
Other Commercial Complaint Case *(non-
tort/non-complex)*
Other Civil Complaint *(non-tort/non-
complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

# General Information

| | |
|---|---|
| **Case Name** | GRIMES, et al. vs. LOWES HOME CENTERS, LLC, et al. |
| **Court** | California Superior Court |
| **Date Filed** | Thu Apr 02 00:00:00 EDT 2026 |
| **Judge(s)** | Jill H. Talley |
| **Docket Number** | 26CV008109 |
| **Parties** | Lowes Companies, Inc.; on behalf of themselves and all others similarly situated; Lowes Home Centers, LLC; Ashley Grimes; Cameron Diegle |

© 2026 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Michael Connett<br>Bar #:300314<br>Siri & Glimstad LLP<br>700 S. Flower Street, Suite 1000, Los Angeles, California 90017 | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>04/20/2026<br>By: _____ T. Mercadel _____ Deputy |

TELEPHONE NO.: (772) 783-8436    FAX NO. (Optional):

E-MAIL ADDRESS (Optional): mconnett@sirillp.com

ATTORNEY FOR (Name): ASHLEY GRIMES and CAMERON DIEGLE. on behalf of themselves

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS: 720 9th Street

MAILING ADDRESS: 720 9th Street

CITY AND ZIP CODE: Sacramento, 95814

BRANCH NAME: Gordon D. Schaber Sacramento County Courthouse

PLAINTIFF/PETITIONER: ASHLEY GRIMES and CAMERON DIEGLE, on behalf of themselves

DEFENDANT/RESPONDENT: LOWE'S HOME CENTERS, LLC, et al.

CASE NUMBER: 26CV008109

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: 15475 |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☒ summons
   b. ☒ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☒ other *(specify documents):* NOTICE OF CIVIL HOME COURT ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (UNLIMITED CIVIL CASE)

3. a. Party served *(specify name of party as shown on documents served):*
      LOWE'S HOME CENTERS, LLC
   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      Rebecca Vang, Intake Specialist/Authorized to Accept for Registered Agent, Corporation Service Company

4. Address where the party was served:
   2710 Gateway Oaks Dr, Ste 150N, Sacramento, CA 95833-3502

5. I served the party *(check proper box)*
   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):* April 10, 2026    (2) at *(time):* 12:17 pm
   b. ☐ **by substituted service.** On *(date):*    at *(time):*    I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*    from *(city):*    **or** ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Code of Civil Procedure, § 417.10

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

POS-010

| PLAINTIFF/PETITIONER: ASHLEY GRIMES and CAMERON DIEGLE, on behalf of themselve | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: LOWE'S HOME CENTERS, LLC, et al. | 26CV008109 |

5.  c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*              (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☒ On behalf of *(specify):* LOWE'S HOME CENTERS, LLC

    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)           ☐ 415.95 (business organization, form unknown)

    ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)

    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)

    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)

    ☐ 416.50 (public entity)             ☐ 415.46 (occupant)

                                    ☒ other: Cal. Corp. Code § 17701.16; limited liability company

7.  **Person who served papers**

  a.  Name:  Laurel Glaze

  b.  Address:  316 BERKELEY AVE, 316 BERKELEY AVE, Roseville, CA 95678

  c.  Telephone number:  +1 (279) 800-7940

  d.  **The fee** for service was: $ 92

  e.  I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☒ a registered California process server:

      (i) ☒ owner  ☐ employee  ☐ independent contractor.

      (ii) Registration No.: 2021-016

      (iii) County: Sacramento County

8.  ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: [date]  4/15/2(e)

Laurel Glaze
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ /s/ [signature]    *(SIGNATURE)*

---

POS-010 [Rev. January 1, 2007]        **PROOF OF SERVICE OF SUMMONS**        Page 2 of 2

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]  [ Save this form ]    [ Clear this form ]

Exhibit 1a)



4/10/2026 12:17 pm PDT
2710 Gateway Oaks Dr, Ste 150N, Sacramento, CA 95833-3502
38.6161937, -121.5166093

POS-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br><br>Michael Connett<br>Bar #:300314<br>Siri & Glimstad LLP<br>745 5th Avenue, New York, NY 10151<br>TELEPHONE NO.: (772) 783-8436        FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* mconnett@sirillp.com<br>ATTORNEY FOR *(Name):* ASHLEY GRIMES and CAMERON DIEGLE | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>04/20/2026<br>By: _____ Deputy<br>T. Mercadel |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**
STREET ADDRESS: 720 9th Street
MAILING ADDRESS: 720 9th Street
CITY AND ZIP CODE: Sacramento, 95814
BRANCH NAME: Gordon D. Schaber Sacramento County Courthouse

| | |
|---|---|
| PLAINTIFF/PETITIONER: ASHLEY GRIMES; et al.<br>DEFENDANT/RESPONDENT: LOWE'S HOME CENTERS, LLC; et al. | CASE NUMBER:<br>26CV008109 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>15475 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. [x] summons
   b. [x] complaint
   c. [ ] Alternative Dispute Resolution (ADR) package
   d. [x] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [x] other *(specify documents):* NOTICE OF CIVIL HOME COURT ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (UNLIMITED CIVIL CASE)

3. a. Party served *(specify name of party as shown on documents served):*
      LOWE'S COMPANIES, INC., a North Carolina Corporation

   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      Registered Agent CT Corporation, Daisy Montenegro, Intake Specialist/Authorized to Accept

4. Address where the party was served:
   330 N Brand Blvd, Ste 700, Glendale, CA 91203-2336

5. I served the party *(check proper box)*
   a. [x] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):* April 9, 2026        (2) at *(time):* 1:40 pm

   b. [ ] **by substituted service.** On *(date):*                at *(time):*            I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*            from *(city):*            **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |

POS-010

| | |
|---|---|
| PLAINTIFF/PETITIONER: ASHLEY GRIMES; et al.<br>DEFENDANT/RESPONDENT: LOWE'S HOME CENTERS, LLC; et al. | CASE NUMBER:<br>26CV008109 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*                                              (2) from *(city):*

(3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

(4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d.  ☐  **by other means** *(specify means of service and authorizing code section):*

☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

a.  ☐  as an individual defendant.

b.  ☐  as the person sued under the fictitious name of  *(specify):*

c.  ☐  as occupant.

d.  ☒  On behalf of *(specify):*  LOWE'S COMPANIES, INC., a North Carolina Corporation

under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒  416.10 (corporation) | ☐  415.95 (business organization, form unknown) |
| ☐  416.20 (defunct corporation) | ☐  416.60 (minor) |
| ☐  416.30 (joint stock company/association) | ☐  416.70 (ward or conservatee) |
| ☐  416.40 (association or partnership) | ☐  416.90 (authorized person) |
| ☐  416.50 (public entity) | ☐  415.46 (occupant) |
| | ☐  other: |

7.  **Person who served papers**

a.  Name:  Daniel Benavides

b.  Address:  5933 Echo St, Los Angeles, CA 90042

c.  Telephone number:  +1 (323) 910-5708

d.  **The fee** for service was: $ 92

e.  I am:

(1)  ☐  not a registered California process server.

(2)  ☐  exempt from registration under Business and Professions Code section 22350(b).

(3)  ☒  a registered California process server:

(i)  ☒ owner   ☐  employee   ☐  independent contractor.

(ii)  Registration No.:  2020026215

(iii)  County:  Los Angeles County

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:  [date]  04.14.2026

Daniel Benavides
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶  /s/ [signature]
_____
(SIGNATURE)

POS-010 [Rev. January 1, 2007]               **PROOF OF SERVICE OF SUMMONS**                    **Page 2 of 2**

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form    Save this form    Clear this form

Exhibit 1a)



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LOWE'S COMPANIES, INC., a North Carolina Corporation

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ASHLEY GRIMES and CAMERON DIEGLE, on behalf of themselves and all others similarly situated

ELECTRONICALLY FILED
Superior Court of California
County of Sacramento
04/03/2026
By: _____ V. Bloxson _____ Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

   *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: Gordon D. Schaber Sacramento County Courthouse
*(El nombre y dirección de la corte es):*

720 9th Street, Sacramento, CA 95814

CASE NUMBER:
*(Número del Caso):*

26CV008109

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael Connett, 700 S. Flower Street, Suite 1000, (772) 783-8436

DATE: 04/03/2026                    Clerk, by   */s/ V. Bloxson*                    , Deputy
*(Fecha)*                           *(Secretario)* _____   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ]   as an individual defendant.
2. [ ]   as the person sued under the fictitious name of *(specify):*

3. [ ]   on behalf of *(specify):*
   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ]   by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100  [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LOWE'S HOME CENTERS, LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ASHLEY GRIMES and CAMERON DIEGLE, on behalf of themselves and all others similarly situated

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
04/03/2026
By: _____ Deputy
V. Bloxson

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: Gordon D. Schaber Sacramento County
*(El nombre y dirección de la corte es):* Courthouse

720 9th Street, Sacramento, CA 95814

CASE NUMBER:
*(Número del Caso):*
26CV008109

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael Connett, 700 S. Flower Street, Suite 1000, (772) 783-8436

DATE:
*(Fecha)* 04/03/2026

Clerk, by
*(Secretario)* ___/s/ V. Bloxson___ , Deputy
*(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF SACRAMENTO** | Court Use Only |
| COURTHOUSE ADDRESS:<br>Gordon D. Schaber Superior Court<br>720 9th Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER:<br>Ashley Grimes  et al | |
| DEFENDANT/RESPONDENT:<br>Lowes Home Centers, LLC et al | |

| | |
|---|---|
| **NOTICE OF CIVIL HOME COURT ASSIGNMENT**<br>**AND CASE MANAGEMENT CONFERENCE**<br>**(UNLIMITED CIVIL CASE)** | CASE NUMBER:<br>26CV008109 |

**THIS NOTICE SHALL BE SERVED BY PLAINTIFF'S COUNSEL ON ALL OTHER PARTIES. ANY PARTY WHO HEREAFTER SERVES SUMMONS IN THIS ACTION UPON A NEW PARTY SHALL SERVE A COPY OF THIS NOTICE ON THE NEW PARTY ALONG WITH THE SUMMONS AND COMPLAINT OR CROSS-COMPLAINT.**

<u>**NOTICE OF CIVIL HOME COURT ASSIGNMENT**</u>

Pursuant to rule 3.734 of the California Rules of Court and Standing Order SSC-25-7, this action is hereby assigned for limited purposes to the Civil Home Court department indicated below:

| PURPOSE | DEPARTMENT | COURT LOCATION |
|---|---|---|
| **CASE MANAGEMENT PROGRAM**<br>**and**<br>**LAW & MOTION** | 54 | Hall of Justice |

**Please refer to the Civil Home Court page at www.saccourt.ca.gov for additional filing instructions and information about hearing reservations, tentative rulings, and requesting oral argument.**

<u>**NOTICE OF CASE MANAGEMENT CONFERENCE**</u>

**Hearing Date**

The above entitled action has been set for a case management conference at **9:00 AM** on **March 3, 2027** in **Department 54** in accordance with California Rules of Court 3.722. You must be familiar with the case and fully prepared to participate effectively in the case management conference.

**Case Management Statement**

All parties must file and serve a case management statement at least 15 calendar days before the case management conference. Parties are encouraged to file a single joint case management statement.

**Tentative Ruling / Confirming Appearance at the Hearing**
The Court will issue a tentative ruling not later than 2:00 p.m. of the court day before the hearing date which may be viewed by logging into the court's online public portal and accessing your case.

<u>Unless an appearance is ordered in the tentative ruling, parties do not need to appear.</u> A party requesting appearance to contest a tentative ruling must call the oral argument request line and notify the opposing party no later than 4:00 p.m. on the court day before the hearing.

**NOTICE OF CIVIL HOME COURT ASSIGNMENT**
**AND CASE MANAGEMENT CONFERENCE**
**(UNLIMITED CIVIL CASE)**

| SHORT TITLE: GRIMES, et al. vs LOWES HOME CENTERS, LLC, et al. | CASE NUMBER: 26CV008109 |
|---|---|

| Remote Appearances | Unless ordered to appear in person by the court, parties may appear remotely either telephonically or by video conference via the Zoom video/audio conference platform with notice to the court and all other parties in accordance with Code of Civil Procedure 367.75. If appearing remotely, parties are required to participate in their hearing using a device that has video and/or audio capability (i.e. computer, smartphone, or tablet). Although remote participation is not required, the court will presume all parties are appearing remotely for non-evidentiary civil hearings. |
|---|---|
| **Minimum Requirements** | Prior to the filing of the case management statement, the parties should have done the following:<br><br>• Served all parties named in the complaint within 60 days after the summons has been issued<br>• Ensured that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered |
| **Certification Filed in Lieu of Case Management Statement** | If parties in the action file a certification on a form provided by the court at least 15 calendar days prior to the date of the case management conference that the case is short cause (five hours or less of trial time), that the pleading stage is complete and that the case will be ready for trial within 60 days, the case will be exempted from any further case management requirements and will be set for trial within 60-120 days. The certification shall be filed in lieu of a case management statement. |
| **Case Management Orders** | At the case management conference, the court will consider whether the case should be ordered to judicial arbitration or referred to other forms of Alternative Dispute Resolution. Whether or not a case management conference is held, the court will issue a case management order shortly after the scheduled conference date. |
| **Compliance** | Failure to comply with this notice or to appear at the case management conference may result in the imposition of sanctions (including dismissal of the case, striking of the answer, or payment of money). |
| **Continuances** | Case management conference(s) will not be continued except on a showing of good cause. If your case management conference is continued on motion or by the court on its own motion all parties shall file and serve a new case management statement at least 15 calendar days before the continued case management conference. |

Dated: 04/03/2026                    By:        /s/ V. Bloxson

V. Bloxson, Deputy Clerk

**NOTICE OF CIVIL HOME COURT ASSIGNMENT
AND CASE MANAGEMENT CONFERENCE
(UNLIMITED CIVIL CASE)**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

Tani G. Cantil-Sakauye Courthouse, Department 10B

## JUDICIAL OFFICER: HONORABLE STEVEN M. GEVERCER

Courtroom Clerk: L.Chen-Knapp                                    CSR: None

---

**26CV008109**                                                   April 29, 2026
                                                                 3:46 PM
**GRIMES, et al.**
 **vs**
**LOWES HOME CENTERS, LLC, et al.**

---

## MINUTES

**APPEARANCES:**

No Appearances

**NATURE OF PROCEEDINGS: Complex Determination**

COMPLEX DETERMINATION

Having reviewed and considered the pleadings on file, the Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Sacramento County Local Rules concerning complex litigation.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten (10) calendar days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Payment may be submitted by mail or placed in one of the Civil Drop Boxes located in the lobby of the Civil Public Filing Counter of the Tani G. Cantil-Sakauye Courthouse at 500 G Street, Sacramento, CA 95814. Please make checks payable to the Clerk of the Superior Court.

Failure to pay the required fees shall have the same effect as the failure to pay a filing fee, and shall be subject to the same enforcement and penalties (Cal. Gov. Code § 70616(g)).

SERVICE OF THIS ORDER

The plaintiff is directed to serve all other parties with a copy of this order.

**This action involves or is likely to involve**: Claims involving class actions.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**

Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve.

Management of a large number of witnesses or a substantial amount of documentary evidence.

The case is ordered reassigned to Judge Jill H. Talley in Department 8A at the Tani G. Cantil-Sakauye Courthouse for all further proceedings and for all purposes.

Any previously calendared hearings in departments other than the newly assigned courtroom are advanced to this date and vacated.

Certificate of Mailing is attached.

/s/ L. Chen-Knapp
L. Chen-Knapp, Deputy Clerk

By:

Minutes of: 04/29/2026
Entered on: 04/29/2026

| SUPERIOR COURT OF CALIFORNIA COUNTY OF SACRAMENTO | Reserved for Clerk's File Stamp |
|---|---|
| **COURTHOUSE ADDRESS:**<br>Tani G. Cantil-Sakauye Courthouse<br>500 G Street, Sacramento, CA 95814 | |
| **PLAINTIFF/PETITIONER:**<br>Ashley Grimes  et al | |
| **DEFENDANT/RESPONDENT:**<br>Lowes Home Centers, LLC et al | |

| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>26CV008109 |
|---|---|

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Complex Determination)  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Sacramento, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Michael P. Connett
SIRI & GLIMSTAD LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017

Dated: 04/30/2026                    By:

/s/ L. Chen-Knapp
L. Chen-Knapp, Deputy Clerk

**CERTIFICATE OF MAILING**

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF SACRAMENTO** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Sacramento<br>**05/01/2026**<br>T. Shaddix, Deputy |
| COURTHOUSE ADDRESS:<br>Tani G. Cantil-Sakauye Courthouse<br>500 G Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER:<br>Ashley Grimes  et al | |
| DEFENDANT/RESPONDENT:<br>Lowes Home Centers, LLC et al | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDERS**<br>**RE: COMPLEX CASE MANAGEMENT PROCEDURES**<br><br>Complex Civil Dept.: **8A**<br>Judge: **Jill Talley** | CASE NUMBER:<br>26CV008109 |

**THIS NOTICE SHALL BE SERVED BY PLAINTIFF'S COUNSEL ON ALL OTHER PARTIES. ANY PARTY WHO HEREAFTER SERVES SUMMONS IN THIS ACTION UPON A NEW PARTY SHALL SERVE A COPY OF THIS NOTICE AND THE COURT'S CURRENT STANDING ORDERS ON THE NEW PARTY ALONG WITH THE SUMMONS AND COMPLAINT OR CROSS-COMPLAINT.**

1.      Pursuant to the Presiding Judge's Notice and Order of Complex Case Determination, the above-referenced case has been designated as complex as defined by California Rule of Court 3.400, assigned to this department for complex case management, and pre-assigned to this department for trial.  This is an *all-purpose* assignment under California Rule of Court 3.734, such that law and motion matters, motions for consolidation, severance, bifurcation, intervention and to continue trial shall be heard in this department unless otherwise directed by this Court.  Other motions referenced in Local Rule 1.05 shall also be heard in this department.

2.  The Court orders all parties to appear for a **Case Management Conference** on **10/30/2026**, at **10:30 AM** in **Dept 8A**.

**Please check the Civil Tentative Ruling in the case on the public portal prior to the above hearing date to confirm appearances and/or any updates (including updates to the hearing date/time).**

NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDERS
RE: COMPLEX CASE MANAGEMENT PROCEDURES

| SHORT TITLE: GRIMES, et al. vs LOWES HOME CENTERS, LLC, et al. | CASE NUMBER: 26CV008109 |
|---|---|

Effective January 3, 2022, civil hearings will be open for in-person appearances.

**However, the Court will continue to allow and strongly encourages all parties to appear remotely, subject to Code of Civil Procedure § 367.75 whenever possible. Additional information can be found at:**

**https://www.saccourt.ca.gov/civil/docs/pn-civil-remote-and-in-person-proceedings-effective-monday-january-3-2022.pdf**.

To join by Zoom link - https://saccourt-ca-gov.zoomgov.com/j/16108301121

To join by phone dial (833) 568-8864 / ID: 16108301121

3. **The Complex Civil Case Department provides information to assist you in managing your complex case on the Court website at https://www.saccourt.ca.gov/civil/complex-civil-cases.aspx. This includes the Department's most current standing orders. The parties shall review this website regularly to stay abreast of the most recent complex civil case procedures and standing orders. Please refer to the website before directly contacting the Court Clerk for information.**

**IT IS SO ORDERED.**

Dated: 05/01/2026

By: *Jill Talley*

Jill H. Talley, Judge

JUDGE OF THE SUPERIOR COURT

NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDERS
RE: COMPLEX CASE MANAGEMENT PROCEDURES

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SACRAMENTO

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:
Tani G. Cantil-Sakauye Courthouse
500 G Street, Sacramento, CA 95814

PLAINTIFF/PETITIONER:
Ashley Grimes  et al

DEFENDANT/RESPONDENT:
Lowes Home Centers, LLC et al

**CERTIFICATE OF MAILING**

CASE NUMBER:
26CV008109

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of CMC and Orders Re Complex Case Management Procedures D.8A upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Sacramento, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Michael P. Connett
SIRI & GLIMSTAD LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017

Dated: 05/01/2026              By:       /s/ T. Shaddix
                                         T. Shaddix, Deputy Clerk

**CERTIFICATE OF MAILING**

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SACRAMENTO** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Sacramento<br>05/01/2026<br>T. Shaddix, Deputy |
| COURTHOUSE ADDRESS:<br>Tani G. Cantil-Sakauye Courthouse<br>500 G Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER:<br>Ashley Grimes  et al | |
| DEFENDANT/RESPONDENT:<br>Lowes Home Centers, LLC et al | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDERS<br>RE: COMPLEX CASE MANAGEMENT PROCEDURES**<br><br>Complex Civil Dept.: **8A**<br>Judge: **Jill Talley** | CASE NUMBER:<br>26CV008109 |

**THIS NOTICE SHALL BE SERVED BY PLAINTIFF'S COUNSEL ON ALL OTHER PARTIES. ANY PARTY WHO HEREAFTER SERVES SUMMONS IN THIS ACTION UPON A NEW PARTY SHALL SERVE A COPY OF THIS NOTICE AND THE COURT'S CURRENT STANDING ORDERS ON THE NEW PARTY ALONG WITH THE SUMMONS AND COMPLAINT OR CROSS-COMPLAINT.**

1.     Pursuant to the Presiding Judge's Notice and Order of Complex Case Determination, the above-referenced case has been designated as complex as defined by California Rule of Court 3.400, assigned to this department for complex case management, and pre-assigned to this department for trial.  This is an *all-purpose* assignment under California Rule of Court 3.734, such that law and motion matters, motions for consolidation, severance, bifurcation, intervention and to continue trial shall be heard in this department unless otherwise directed by this Court.  Other motions referenced in Local Rule 1.05 shall also be heard in this department.

2.  The Court orders all parties to appear for a **Case Management Conference** on **10/30/2026**, at **10:30 AM** in **Dept 8A**.

    **Please check the Civil Tentative Ruling in the case on the public portal prior to the above hearing date to confirm appearances and/or any updates (including updates to the hearing date/time).**

NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDERS
RE: COMPLEX CASE MANAGEMENT PROCEDURES

| SHORT TITLE: GRIMES, et al. vs LOWES HOME CENTERS, LLC, et al. | CASE NUMBER: 26CV008109 |
|---|---|

Effective January 3, 2022, civil hearings will be open for in-person appearances.

**However, the Court will continue to allow and strongly encourages all parties to appear remotely, subject to Code of Civil Procedure § 367.75 whenever possible. Additional information can be found at:**

**https://www.saccourt.ca.gov/civil/docs/pn-civil-remote-and-in-person-proceedings-effective-monday-january-3-2022.pdf**.

To join by Zoom link - https://saccourt-ca-gov.zoomgov.com/j/16108301121

To join by phone dial (833) 568-8864 / ID: 16108301121

3. **The Complex Civil Case Department provides information to assist you in managing your complex case on the Court website at https://www.saccourt.ca.gov/civil/complex-civil-cases.aspx. This includes the Department's most current standing orders. The parties shall review this website regularly to stay abreast of the most recent complex civil case procedures and standing orders. Please refer to the website before directly contacting the Court Clerk for information.**

**IT IS SO ORDERED.**

Dated: 05/01/2026                    By:    *Jill Talley*

Jill H. Talley, Judge

JUDGE OF THE SUPERIOR COURT

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SACRAMENTO | Reserved for Clerk's File Stamp |
|---|---|

| COURTHOUSE ADDRESS:<br>Tani G. Cantil-Sakauye Courthouse<br>500 G Street, Sacramento, CA 95814 | |
|---|---|
| PLAINTIFF/PETITIONER:<br>Ashley Grimes  et al | |
| DEFENDANT/RESPONDENT:<br>Lowes Home Centers, LLC et al | |

| CERTIFICATE OF MAILING | CASE NUMBER:<br>26CV008109 |
|---|---|

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of CMC and Orders Re Complex Case Management Procedures D.8A upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Sacramento, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Michael P. Connett
SIRI & GLIMSTAD LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017

Dated: 05/01/2026                    By:        /s/ T. Shaddix
                                                 T. Shaddix, Deputy Clerk


**CERTIFICATE OF MAILING**